UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**ANDRE BIALO,**<br><br>             **Defendant.** | Case No.<br><br>**VIOLATION:**<br>**18 U.S.C. § 1035(a)(2) (False Statements Relating to Health Care Matters)**<br><br>**FORFEITURE:**<br>**18 U.S.C. § 982(a)(7); 28 U.S.C. § 2461(c)**<br><br><u>**UNDER SEAL**</u> |

## INFORMATION

The United States of America charges that:

### BACKGROUND

At all times material to this Information:

#### D.C. Medicaid and Behavioral Health Regulatory Framework

1.  Medicaid was a health insurance program established by Congress under Title XIX of the Social Security Act of 1965. In the District of Columbia (D.C.), Medicaid was jointly funded by the federal and D.C. governments. Medicaid provided health insurance coverage to D.C. residents whose incomes were below a certain financial threshold. Recipients of medical services covered by Medicaid were referred to as "beneficiaries." Medicaid was a "health care benefit program" as defined in 18 U.S.C. § 24(b) and a "Federal health care program" as defined in 42 U.S.C. § 1320a-7b(f). Under Medicaid, only medically necessary services were authorized to be reimbursed.

2.  In Washington D.C., behavioral health services were administered by the D.C. Department of Behavioral Health ("DBH"). As the primary mental health authority in D.C., DBH

was responsible for implementing and overseeing D.C.'s Mental Health Rehabilitative Services ("MHRS") program, a program covered by Medicaid. MHRS services were intended to assist eligible beneficiaries navigate and alleviate the impact of mental and behavioral health issues. Beneficiaries who received MHRS were often referred to as "consumers."

3. Under the MHRS program, Medicaid covered and reimbursed standard behavioral health services, such as Community Support services. Community Support services included, among other things, assistance and support for mental-health consumers in stressor situations, individual mental health interventions, assistance with increasing social support skills to enable consumers to ameliorate life stresses, and the development of mental health relapse prevention strategies. Community Support services were provided by a consumer's Community Support Worker ("CSW") under the auspices of a certified Medicaid Provider known as a Core Services Agency ("Provider"). AFFORDABLE HOME HEALTHCARE LLC ("AFFORDABLE") was one such Provider of Community Support services at all times relevant to this Information.

4. DBH regulations required the actual start and stop time of MHRS encounters to be used to calculate the duration of the service. In D.C., MHRS encounters with consumers were billed in "units," which were equivalent to 15 minutes of time providing services to a consumer. For purposes of reimbursement, Medicaid authorized service encounters exceeding seven minutes to be rounded to the nearest whole unit.

5. Medicaid required a consumer to receive authorization from DBH prior to MHRS services being provided to the consumer. Such authorizations were administrative entries completed in Icams, a DBH managed and monitored system, to communicate to DBH that a consumer continued to require MHRS services. A consumer's authorization period lasted for 180-days or until the maximum amount of allowable units during that period were utilized.

6. Providers were required to maintain up-to-date records and to accurately document all MHRS encounters billed under the Provider's electronic medical records ("EMR") system. In D.C., Providers typically used an EMR platform called Credible. In order to be reimbursed by Medicaid, CSWs were required to document the service in Credible by inputting clinical encounter notes that included, among other information, consumer information, treatment notes, and dates and times of service. In response to the COVID pandemic, in or about March 2020, DBH authorized Providers to conduct MHRS encounters by telehealth. A "tele" visit indicated a telephonic or virtual encounter with a consumer. CSWs were required to validate the accuracy and authenticy of the services by signing their names electronically in Credible.

7. Providers, as well as all employees of Providers, were required to know, understand, and follow all federal and local laws, including Medicaid rules and regulations applicable in Washington D.C. BIALO, however, did not receive proper or appropriate training to engage in tasks associated human resources and Medicaid billing.

### False Statements to Medicaid

8. Defendant BIALO worked as an employee of The Marcauley Group, which was a corporate entity formed by BIALO's supervisor, O.O. BIALO's title was listed as "People Officer." Beginning in or about April 2021, The Marcauley Group entered into an arrangement with AFFORDABLE. As part of the arrangement, The Marcauley Group used AFFORDABLE's Electronic Medical Records platform, Credible. In addition to providing human-resources support, BIALO assisted with managing Credible. Although BIALO was not employed as a CSW or in any clinical capacity, he nevertheless submitted, or caused to be submitted, CSW encounter notes to Medicaid for reimbursement for MHRS services he allegedly performed.

9. Almost all of the CSW notes submitted by BIALO were allegedly for "authorizations." Administrative tasks, such as re-submitting authorizations to DBH, do not qualify as a reimbursable CSW service under Medicaid regulations. In completing these authorization notes, BIALO used templates—in other words, cut-and-paste language—that he had received from AFFORDABLE employees. The notes indicated that BIALO had engaged in telehealth encounters with specific consumers and had "collaborated" with a consumer's CSW to ensure proper authorization of MHRS services. In reality, BIALO had not spoken with the CSW or the consumer. On multiple occasions, BIALO billed for such "authorization" services for consumers who had passed away months before BIALO submitted the encounter note. BIALO also submitted these authorizations for reimbursement knowing that such services were not eligible for reimbursement as CSW services.

10. By submitting encounter notes into Credible and to Medicaid for reimbursement, BIALO was required to certify that the services were medically necessary and had been performed as documented in the encounter notes. He made such certifications for all of the encounter notes discussed above, even though he knew that they contained materially inaccurate information and characterizations. BIALO made these inaccurate statements at the behest of his supervisor and employer, O.O., who instructed BIALO that it was acceptable to put false statements on the authorization notes.

## COUNT ONE
**(False Statements Relating to Health Care Matters)**

11. The allegations contained paragraphs one through ten are realleged and incorporated as if fully set forth in this paragraph.

12. On or about November 10, 2021, in the District of Columbia and elsewhere, ANDRE BIALO knowingly and willfully made a materially false, fictitious, and fraudulent

statement and representation in connection with the delivery and payment for health care benefits, items, and services involving the D.C. M.H.R.S. Medicaid program, a health care benefit program as defined in 18 U.S.C. § 24(b): specifically, BIALO asserted that he had spent thirty minutes providing "authorization" services to R.K., by assisting R.K. and collaborating with R.K.'s CSW in order to obtain proper insurance authorization for R.K. to receive MHRS services, when, in fact, BIALO had not spent any time providing any services to R.K.

**(False Statements Relating to Health Care Matters, in violation of 18 U.S.C. § 1035(a)(2))**

## FORFEITURE ALLEGATION

1. Upon conviction of the Federal health care offense alleged in Count 1 of this Information, defendant BIALO shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, which constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of such offense.

2. If any of the property described above as being subject to forfeiture, as a result of of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be subdivided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c).

                            MATTHEW M. GRAVES
                            UNITED STATES ATTORNEY
                            D.C. Bar No. 481052

By: _[signature]_
                            CHRISTOPHER R. HOWLAND (DC 1016866)
                            Assistant United States Attorney
                            Fraud, Public Corruption, & Civil Rights Section
                            U.S. Attorney's Office for Washington D.C.
                            601 D Street N.W.
                            Washington, D.C. 20530
                            (202) 252-7106
                            Christopher.Howland@usdoj.gov